UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITERATI, LLC,

    Plaintiff/Counter-Defendant,

                                    Case No.  20-12764

vs.                                    HON.  GEORGE CARAM STEEH

LITERATI, INC.,

    Defendant/Counter-Plaintiff.
_____/

ORDER GRANTING DEFENDANT'S AMENDED
MOTION TO DISMISS COUNT IV [ECF No. 19]

This litigation is between two book sellers who both use the name LITERATI.  In the First Amended Complaint ("FAC"), plaintiff LITERATI, LLC alleges claims against defendant LITERATI, INC. for trademark infringement and unfair competition under the Lanham Act and Michigan common law and includes a claim for tortious interference with a business relationship or expectancy.  The matter is before the Court on defendant's amended motion to dismiss Count IV, alleging the tortious interference, for failure to adequately state a claim under Fed. R. Civ. P. 12(b)(6).[1]

---

[1] Defendant's original motion to dismiss (ECF No. 9) is superseded by the amended motion to dismiss (ECF No. 19) which was filed following plaintiff's amended complaint.

The matter is fully briefed, and the Court does not believe it will be further aided by oral argument. For the reasons stated below, defendant's motion to dismiss is GRANTED.

## STATEMENT OF FACTS

Plaintiff started its business in 2013 and uses the LITERATI BOOKSTORE mark in connection with its Ann Arbor-based, independent bookstore. Plaintiff has a brick and mortar shop in downtown Ann Arbor, and sells books online and through its adult subscription book service.

Plaintiff has a trademark for LITERATI BOOKSTORE (the "'860 Registration") and for its design *literati* (the "'760 Registration"), which it has used continuously since 2013. Plaintiff launched its adult online subscription book club service in August 2015 and filed an application for registration of the trademark LITERATI CULTURA in connection with "subscription-based order fulfillment services in the field of books for adults" (the "'756 Application"). The '860 Registration, '760 Registration, '756 application, and plaintiff's associated trademarks, name, and logos are referred to collectively herein as "Plaintiff's Literati Marks".

Defendant Literati, Inc. was co-founded by Jessica Ewing and Kelly Carroll. Ewing is alleged to have lived and worked in Ann Arbor in 2013 when LITERATI BOOKSTORE was launched. Defendant started a

children's book subscription service in Austin, TX at the end of 2016. Plaintiff sent two cease and desist letters to defendant, on April 11, 2017 and June 22, 2017.  Defendant applied for registration of its Literati mark *Literati* on April 26, 2018.

In September 2019, plaintiff filed an action against defendant before the Trademark Trial and Appeal Board ("TTAB"), opposing defendant's application to register its version of the Literati mark.   Defendant's position had been that its offerings were limited to "an online subscription service for children 9 and under" so it could not be confused with plaintiff's business. However, in August 2020, defendant launched an online subscription service for adults.  In response, on October 12, 2020, plaintiff filed this lawsuit alleging in part that defendant directly infringed Plaintiff's Literati Marks, including the '756 Application covering a "subscription-based order fulfillment services in the field of books for adults."

In Count IV of the FAC, tortious interference with a contract, business relationship or expectancy, plaintiff alleges that defendant knowingly and intentionally used its infringing marks, logo and name, with full knowledge of plaintiff's superior rights to the marks. According to the FAC, defendant used the infringing marks to target, advertise to, and/or mislead plaintiff's customers and prospective customers, thereby intentionally, improperly

and/or maliciously interfering with plaintiff's business relationships and expectancies.  (ECF No. 16, PageID.160-161).

The matter is before the Court on defendant's motion to dismiss Count IV.  Plaintiff's other counts include: trademark infringement under 15 U.S.C. § 1114 of the Lanham Act (Count I); unfair competition, false advertising and false designation of origin under 15 USC §1125(a) of the Lanham Act (Count II); unfair competition/trademark infringement under Michigan Common Law (Count III); unjust enrichment (Count V); and declaratory judgment (Count VI).  None of these other counts are challenged by defendant in the motion to dismiss.

## LEGAL STANDARD

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "state a claim to relief that is plausible on its face".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 557, 570).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

## ANALYSIS

I.  Elements of Tortious Interference Claim

Michigan common law recognizes two distinct claims of tortious interference – interference with a contract and interference with a business relationship or expectancy.  *Franklin Cap. Funding v. AKF, Inc.*, No. 19-CV-13562, 2020 WL 3605155, at *3 (E.D. Mich. July 2, 2020) (citations omitted).  A claim for tortious interference with a contract or contractual relationship requires proof of the existence of a contract and a showing that the wrongdoer intentionally caused the contract to be breached.  See *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich.

App. 83, 89 (2005). In this case, plaintiff does not identify a contract that has been breached, but rather asserts a claim of tortious interference with a business relationship or expectancy (ECF No. 27, PageID.403-404). To state such a claim, plaintiff must allege the following elements:

> (1) a valid business relation or expectancy; (2) knowledge of the relationship on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff.

*Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 242 (6th Cir. 2020) (applying Michigan law).

In its motion to dismiss, defendant challenges whether plaintiff has alleged the second and third elements with the required level of specificity.

### A.   Knowledge of the Relationship

In the FAC, plaintiff contends that defendant "knew of business relationships and expectancies between Plaintiff and its customers." (FAC ¶ 122; ECF No. 16, PageID.160). The only allegation in the FAC that addresses defendant's knowledge of plaintiff's relationships, provides that, upon information and belief, defendant has additional evidence of the customers and relationships it interfered with but has refused to turn over the information. (FAC ¶ 101; ECF No. 16, PageID.156).

The FAC includes 30 examples of customers confusing defendant for plaintiff; however, plaintiff does not allege that defendant had knowledge of these individuals as plaintiff's customers or prospective customers. (FAC ¶¶ 69-100; ECF No. 16, PageID.150-155).  Plaintiff contends that the examples show "Defendant has targeted Plaintiff's customers, potential customers, and contractual relations by, inter alia, knowingly and intentionally using Defendant's infringing marks, logo, and name, sending targeted advertisements to them, and causing actual confusion."  (FAC ¶ 68; ECF No. 16, PageID.149-150).  However, the fact that the FAC identifies anonymous customers (Customer 1, 2, 3, etc.), claiming they were confused about the source of advertising or the ownership of a website due to the alleged improper use of infringing marks, logo and name, does not suffice to support the allegation that defendant had knowledge of specific relationships as required to state a tortious interference claim.

Next, plaintiff points to the two cease and desist letters it sent, demanding that defendant stop wrongfully targeting plaintiff's customers with the infringing marks.  Plaintiff maintains that defendant's tortious interference occurred after the cease and desist letters.  It is not clear how the letters, demanding that defendant stop infringing Plaintiff's Literati

Marks, support plaintiff's allegation that that defendant knew the identities of plaintiff's customers.

The parties in this case are competitors in the field of online subscription book club services. It is therefore plausible that a person who is interested in purchasing an online subscription to a book club is a potential customer of both parties. However, it is not enough for defendant to merely advertise its book services to book lovers. Defendant's general knowledge of plaintiff's business does not equate to specific knowledge of plaintiff's business relations or expectancies. The latter is what is required. Here plaintiff offers only bare allegations that defendant had knowledge of the business relationship or expectancy that had been breached. This is not enough to plead the second element of a tortious interference claim.

B.   Intentional Interference

The Court does not address intentional interference, having already found that plaintiff does not adequately plead the knowledge element of a claim for tortious interference.

II.   Statute of Limitations

Having determined that plaintiff has failed to plausibly state a tortious interference claim for which relief can be granted under Rule 12(b)(6), the

Court does not address defendant's argument that the claim is barred by the relevant statute of limitations.

## CONCLUSION

Plaintiff having failed to plead the knowledge element of its cause of action for tortious interference with specificity, defendant's motion to dismiss Count IV is GRANTED.  Should plaintiff become aware of information that shows defendant had prior knowledge of plaintiff's specific relationships or expectancies, plaintiff may move to reinstate its claim of tortious interference.  Fed. R. Civ. P. 54.  Now, therefore,

IT IS HEREBY ORDERED that defendant's amended motion to dismiss Count IV (ECF No. 19), alleging tortious interference with relationships or expectancies, is GRANTED.

Dated:  March 24, 2021

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 24, 2021, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---